COURT OF APPEALS
DECISION
DATED AND FILED

December 9, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2291-CR**

Cir. Ct. No. 2024CF645

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

 V.

BRIAN TYRONE RICKETTS, JR.,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Brown County: JOHN P. ZAKOWSKI, Judge. *Reversed and cause remanded for further proceedings*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1    HRUZ, J.  Under the domestic abuse repeater statute, WIS. STAT. § 939.621 (2023-24),[1] a defendant qualifies as a "domestic abuse repeater" if, during the ten-year period preceding the commission of an offense, he or she "was convicted on 2 or more separate occasions" of certain crimes involving domestic abuse.  *See* § 939.621(1)(b).  The issue in this appeal concerns the interpretation of the phrase "was convicted on 2 or more separate occasions."  The circuit court interpreted this phrase to mean that the defendant's prior convictions for domestic abuse offenses must arise out of "two separate incidents"; in other words, there must be two "separate dates of offense."  Because the defendant in this case, Brian Tyrone Ricketts, Jr., was convicted of two prior domestic abuse offenses that arose out of the same incident and had a single offense date, the court concluded that Ricketts did not qualify as a domestic abuse repeater.  The court therefore granted Ricketts' motion to strike the domestic abuse repeater enhancer from the charges against him.

¶2    The State now appeals from the circuit court's nonfinal order striking the domestic abuse repeater enhancer from the charges against Ricketts.[2]  The State argues that the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute must be interpreted in harmony with prior interpretations of the phrase "was convicted of a misdemeanor on 3 separate occasions" in the general repeater statute.  *See* WIS. STAT. § 939.62(2).  Specifically, the Wisconsin Supreme Court has concluded that a defendant "was

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] On November 25, 2024, we granted the State's petition for leave to appeal the circuit court's nonfinal order.  *See* WIS. STAT. RULE 809.50(3).  This appeal was then converted from a one-judge appeal to a three-judge appeal under WIS. STAT. RULE 809.41(3).

convicted of a misdemeanor on 3 separate occasions" for purposes of the general repeater statute as long as the defendant was convicted of three misdemeanors during the requisite statutory time period, even if the convictions arose out of the same incident and occurred during a single court appearance. *See generally State v. Wittrock*, 119 Wis. 2d 664, 350 N.W.2d 647 (1984); *State v. Hopkins*, 168 Wis. 2d 802, 484 N.W.2d 549 (1992).

¶3 We agree with the State that our supreme court's prior interpretations of the phrase "was convicted of a misdemeanor on 3 separate occasions" in the general repeater statute should guide our interpretation of the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute. Based on those prior interpretations, we conclude that for purposes of the domestic abuse repeater statute, a defendant "was convicted on 2 or more separate occasions" as long as he or she was convicted of two qualifying domestic abuse offenses during the requisite statutory time period, regardless of whether those convictions arose out of the same incident, had the same offense date, or occurred during the same court appearance.

¶4 In this case, it is undisputed that Ricketts was convicted of two qualifying domestic abuse offenses within the requisite statutory time period. As such, Ricketts qualifies as a domestic abuse repeater. We therefore reverse the circuit court's order striking the domestic abuse repeater enhancer from the charges against Ricketts, and we remand for further proceedings consistent with this opinion.

## BACKGROUND

¶5 The State has charged Ricketts with one count of misdemeanor battery and one count of disorderly conduct. Both counts are charged with the

domestic abuse surcharge, *see* WIS. STAT. § 973.055(1), as a repeater, *see* WIS. STAT. § 939.62, and as a domestic abuse repeater, *see* WIS. STAT. § 939.621.

¶6 As relevant here, a domestic abuse repeater is

> [a] person who, during the 10-year period immediately prior to the commission of the crime for which the person is presently being sentenced if the convictions remain of record and unreversed, was convicted on 2 or more separate occasions of a felony or a misdemeanor for which a court imposed a domestic abuse surcharge under [WIS. STAT. §] 973.055(1), a felony or a misdemeanor for which a court waived a domestic abuse surcharge pursuant to [§] 973.055(4), or a felony or a misdemeanor that was committed in another state but that, had it been committed in this state, would have subjected the person to a domestic abuse surcharge under [§] 973.055(1) or that is a crime of domestic abuse under the laws of that state.

WIS. STAT. § 939.621(1)(b). If a person who is a domestic abuse repeater "commits an act of domestic abuse, as defined in [WIS. STAT. §] 968.075(1)(a) and the act constitutes the commission of a crime, the maximum term of imprisonment for that crime may be increased by not more than 2 years." Sec. 939.621(2). In addition, this penalty increase "changes the status of a misdemeanor to a felony." *Id.*

¶7 As the basis for the domestic abuse repeater enhancer in this case, the State alleged in its complaint that on May 26, 2022, Ricketts "was convicted of Battery—Domestic Abuse as a Repeater and Disorderly Conduct—Domestic Abuse as a Repeater, misdemeanor crimes for which the domestic abuse surcharge was imposed, in Outagamie County Case No. 21CF974." The State further alleged that those convictions "remain of record and unreversed."

¶8 Ricketts moved to strike the domestic abuse repeater enhancer from both of the charges in this case. In support of his motion, Ricketts provided

documents showing that both of his convictions in Outagamie County Case No. 2021CF974 arose out of a single incident that occurred on September 5, 2021. Because the convictions "arose out of the same incident," Ricketts argued they did not "qualify as '2 or more separate occasions'" for purposes of the domestic abuse repeater statute. *See* WIS. STAT. § 939.621(1)(b).

¶9 The circuit court entered a written order granting Ricketts' motion to strike the domestic abuse repeater enhancer. Relying on *State v. Rector*, 2023 WI 41, 407 Wis. 2d 321, 990 N.W.2d 213, a case interpreting language in the sex offender registration statute, the court concluded that "the 'common, ordinary and accepted meaning' of 'two or more separate occasions'" means "separate dates of offense." The court explained,

> For example, if a defendant had been involved in only one domestic abuse incident on a particular date and was asked on how many occasions s/he was convicted of a domestic abuse offense, the court would expect the correct answer to be "one." This court often will only impose one set of costs in a case even with multiple convictions arising out of one incident because of its interpretation of separate occasions.

¶10 The circuit court acknowledged that under *Wittrock* and *Hopkins*, "if that same person was convicted of three separate offenses arising out of the one incident[,] s/he would be a repeater and be subject to the repeat offender enhancer in WIS. STAT. § 939.62." The court also acknowledged that, under the prior-construction canon of statutory interpretation, "if courts have settled the meaning of statutory language[,] there is a presumption the same language in a new statute carries the same meaning." The court stated, however, that absent the use of a term of art, the prior-construction canon applies only if the statutes in question are closely related. While the court conceded that the ordinary repeater and domestic abuse repeater statutes are found in the same statutory chapter and

use similar language, the court stated that there are "enough distinctions between" those statutes "that the prior[-]construction canon presumption is overcome by the clear meaning of the language." More specifically, the court reasoned that

> [t]here is one significant difference [between the two statutes]. Although the increased penalties in both statutes are similar, under WIS. STAT. § 939.621 [i.e., the domestic abuse repeater statute], *the penalty increase changes the status of a misdemeanor to a felony*. Such language and effect are **not** found in the general repeater statute. With the elevation of a misdemeanor to a felony, there is a significant change in the case. The matter now involves a preliminary hearing and an arraignment. The court views the impact of prior convictions on separate occasions in sex registry and domestic abuse cases to be significantly different than with the general repeater statute.

¶11    The circuit court therefore declined to apply the Wisconsin Supreme Court's prior interpretations of the phrase "was convicted of a misdemeanor on 3 separate occasions" in the general repeater statute to the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute. Instead, the court stated that "two separate occasions means what it says, that the convictions arose out of two separate incidents." Because Ricketts' two prior convictions arose out of a single incident, the court granted his motion to strike the domestic abuse repeater enhancer. This interlocutory appeal follows.

## DISCUSSION

¶12    This appeal requires us to interpret the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute. *See* WIS. STAT. § 939.621(1)(b). The interpretation of a statute presents a question of law that we review independently. ***State v. Lamar***, 2011 WI 50, ¶22, 334 Wis. 2d 536, 799 N.W.2d 758.

6

¶13 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "We assume that the legislature's intent is expressed in the statutory language," ***id.***, and, accordingly, "[s]tatutory interpretation always begins with examining the statutory language at issue," ***Belding v. Demoulin***, 2014 WI 8, ¶15, 352 Wis. 2d 359, 843 N.W.2d 373. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Kalal***, 271 Wis. 2d 633, ¶45. Further, we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.***, ¶46.

¶14 "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." ***Id.*** (citation omitted). However, if the statute is ambiguous—that is, "capable of being understood by reasonably well-informed persons in two or more senses"—we examine extrinsic sources, such as legislative history, to ascertain the legislature's intent. ***Id.***, ¶¶47, 50-51. We may also use canons of statutory construction to aid our interpretation of an ambiguous statute. *See **State v. Peters***, 2003 WI 88, ¶14, 263 Wis. 2d 475, 665 N.W.2d 171.

> *A. The phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute is ambiguous.*

¶15 In its decision granting Ricketts' motion to strike the domestic abuse repeater enhancer from the charges in this case, the circuit court concluded that the phrase "was convicted on 2 or more separate occasions" in the domestic abuse

7

repeater statute is not ambiguous and "means what it says, that the convictions arose out of two separate incidents." On appeal, Ricketts contends that the circuit court was correct. According to Ricketts, the statutory text is unambiguous because "[if] the legislature wanted [a] person to merely have two convictions [in order to qualify as a domestic abuse repeater], period, it could have said so directly. Instead, the legislature imposed an additional requirement—that those convictions occur on 'separate occasions.'" Ricketts then argues that "two convictions that occur as part of the same occasion fail this plain text requirement."

¶16 We agree with Ricketts that, pursuant to the plain language of the domestic abuse repeater statute, a person must have been convicted of a qualifying offense on two or more separate occasions in order to qualify as a domestic abuse repeater. That conclusion, however, does not resolve this appeal because it does not answer the question of what it means for a defendant to have been convicted of qualifying offenses on "2 or more separate occasions." *See* WIS. STAT. § 939.621(1)(b). On appeal, Ricketts merely asserts that something more than having two prior qualifying convictions is required, but he does not explain what that "something more" is. For instance, he does not explain whether, pursuant to the statute's plain language, the convictions must have arisen from offenses that occurred on different dates or as part of separate courses of conduct, or whether the convictions themselves must have been entered during separate court proceedings.

¶17 We conclude that a reasonable person could interpret the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute in more than one way. The term "occasion" has multiple common, ordinary meanings. *See Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶10, 315

Wis. 2d 350, 760 N.W.2d 156 ("A dictionary may be utilized to guide the common, ordinary meaning of words."). "Occasion" can mean "happening, incident." *Occasion*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/occasion (last visited Nov. 28, 2025). However, it can also mean "a time at which something happens: instance." *Id.*

¶18 Applying the first of these definitions, a person could reasonably conclude that the "occasion" of a conviction means the "happening" or "incident" of the conviction—i.e., the occurrence of the conviction itself. Accordingly, one could reasonably conclude that a person has been convicted of a qualifying domestic abuse offense on "2 or more separate occasions" whenever the person has been convicted two or more times of a qualifying offense, regardless of when those convictions occurred or whether they arose from the same underlying incident.

¶19 Conversely, the second definition of "occasion" quoted above suggests that "occasion" has a temporal element—in other words, that an "occasion" refers to a specific time when something has taken place. Applying this definition, a person could reasonably conclude that an individual was convicted of qualifying domestic abuse offenses "on 2 or more separate occasions" when the underlying offenses took place at different times or, alternatively, when the convictions themselves occurred at different times during separate court proceedings.

¶20 Because the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute is capable of being understood by reasonably well-informed persons in two or more senses, it is ambiguous. *See Kalal*, 271 Wis. 2d 633, ¶47. As noted above, when a statute is ambiguous, we

may consult extrinsic sources, "typically items of legislative history," to determine the legislature's intent. *Id.*, ¶50. In this case, the parties have not directed us to any legislative history of the domestic abuse repeater statute that is relevant to the issue presented in this appeal. Nevertheless, we agree with the State that the meaning of the statutory language can be discerned by applying several canons of statutory construction.[3] *See Peters*, 263 Wis. 2d 475, ¶14.

> B. *Applying canons of statutory construction, the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute should be interpreted consistently with prior judicial interpretations of the phrase "was convicted of a misdemeanor on 3 separate occasions" in the general repeater statute.*

¶21 Citing several related canons of statutory construction, the State argues that we should interpret the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute consistently with the Wisconsin Supreme Court's prior interpretations of the phrase "was convicted of a misdemeanor on 3 separate occasions" in the general repeater statute, as set forth in *Wittrock* and *Hopkins*. We agree with the State's analysis.

---

[3] We pause to note that the State does not argue that the domestic abuse repeater statute is ambiguous. Instead, the State asserts that the canons of statutory construction that are relevant to this appeal are consistent with the plain-meaning statutory analysis set forth in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110, and may be used as part of a plain-meaning analysis of an unambiguous statute. Conversely, Ricketts argues that these canons of construction are "irrelevant when faced with unambiguous plain text."

We need not resolve the parties' disagreement as to whether canons of statutory construction may be used to interpret an unambiguous statute because, as explained above, we conclude that the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute *is* ambiguous. It is undisputed that we may use canons of statutory construction to aid our interpretation of an ambiguous statute. *See State v. Peters*, 2003 WI 88, ¶14, 263 Wis. 2d 475, 665 N.W.2d 171.

¶22     First, the State cites the related-statutes canon of construction, which provides that "statutes in the same chapter 'contain[ing] the same subject matter … must be considered *in pari materia* and construed together.'" *See James v. Heinrich*, 2021 WI 58, ¶19, 397 Wis. 2d 517, 960 N.W.2d 350 (citation omitted); *see also State v. Jeremiah C.*, 2003 WI App 40, ¶17, 260 Wis. 2d 359, 659 N.W.2d 193 (explaining that *in pari materia* "refers to statutes and regulations relating to the same subject matter or having a common purpose" and that "[t]he statutory construction doctrine of *in pari materia* requires a court to read, apply and construe statutes relating to the same subject matter together").

¶23     Second, the State cites the prior-construction canon, which is "an articulation of the principle that when a particular phrase has been given authoritative construction by the courts, it is to be understood according to that construction." *See Rector*, 407 Wis. 2d 321, ¶32. The prior-construction canon "is at its strongest when the court is interpreting a reenactment of the same statute," but "it has also been applied to interpretations of related statutes." *Id.* "Absent the use of a 'term of art,' the prior-construction canon only governs if the different statutes at issue are 'closely related.'" *Id.*, ¶34. "Statutes are closely related when they are in the same chapter, reference one another, or use similar terms." *State v. Reyes Fuerte*, 2017 WI 104, ¶27, 378 Wis. 2d 504, 904 N.W.2d 773. Statutes may also be closely related when they are "within the same statutory scheme." *Id.*

¶24     Third, the State notes that the prior-construction canon operates in tandem with the doctrine of legislative acquiescence, *see Estate of Miller v. Storey*, 2017 WI 99, ¶51, 378 Wis. 2d 358, 903 N.W.2d 759, which provides that "[l]egislative inaction following judicial construction of a statute, while not conclusive, evinces legislative approval of the interpretation," *Progressive N. Ins.*

*Co. v. Romanshek*, 2005 WI 67, ¶52, 281 Wis. 2d 300, 697 N.W.2d 417 (citation omitted); *see also* **Zimmerman v. Wisconsin Elec. Power Co.**, 38 Wis. 2d 626, 634, 157 N.W.2d 648 (1968) ("[W]hen the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct."). This doctrine "applies with equal, if not greater, force where the legislature has acted on the statute, but declines to revise the interpreted language." **Estate of Miller**, 378 Wis. 2d 358, ¶51.

¶25 Fourth, the State cites the harmonious-reading canon, under which "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." **Eau Claire Cnty. DHS v. S.E.**, 2021 WI 56, ¶30, 397 Wis. 2d 462, 960 N.W.2d 391 (citation omitted). Stated differently, "laws addressing the same subject should be interpreted harmoniously, if possible." **CED Props., LLC v. City of Oshkosh**, 2018 WI 24, ¶24, 380 Wis. 2d 399, 909 N.W.2d 136. The harmonious-reading canon is related to the presumption of consistent usage, which provides that "a word or phrase is presumed to bear the same meaning throughout a text." *See* **Estate of Miller**, 378 Wis. 2d 358, ¶35. This presumption may apply even when a term or phrase is used in different chapters of the statutes, *see* **id.**, and the greater the connection or similarity between the statutes, the stronger the presumption, **CED Props.**, 380 Wis. 2d 399, ¶24 n.12.

¶26 Applying these canons of construction, we agree with the State that our interpretation of the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute should be consistent with the Wisconsin Supreme Court's decisions in **Wittrock** and **Hopkins**, which interpreted nearly identical language in the general repeater statute. The domestic abuse repeater statute and the general repeater statute are closely related and *in pari materia*. The

two statutes are located in the same statutory chapter, WIS. STAT. ch. 939 ("Crimes—General Provisions"). Within that chapter, they are both found in Subchapter IV ("Penalties"). In fact, the statutes are located directly next to one another. *See* WIS. STAT. §§ 939.62, 939.621.

¶27 Within Subchapter IV of WIS. STAT. ch. 939, both the domestic abuse repeater statute and the general repeater statute are part of a statutory scheme governing penalty enhancements. Although the two statutes do not reference one another, our supreme court has recognized that they both belong to a group of statutes within ch. 939 that "add enhancements to the penalties specified in WIS. STAT. § 939.50(3)." *See State v. Finley*, 2016 WI 63, ¶5, 370 Wis. 2d 402, 882 N.W.2d 761; *see also State v. Saunders*, 2002 WI 107, ¶16, 255 Wis. 2d 589, 649 N.W.2d 263 (recognizing that both the general repeater statute and the domestic abuse repeater statute "enhance a convicted criminal defendant's potential exposure to confinement").

¶28 Moreover, the general repeater statute and the domestic abuse repeater statute share a similar structure and use similar terms—namely, the phrase "separate occasions." As noted above, the domestic abuse repeater statute provides that a domestic abuse repeater is a person who, "during the 10-year period immediately prior to the commission of the crime for which the person is presently being sentenced if the convictions remain of record and unreversed, was convicted on 2 or more separate occasions of" certain domestic abuse offenses. WIS. STAT. § 939.621(1)(b). The general repeater statute, in turn, states that a person is a repeater if, "during the 5-year period immediately preceding the commission of the crime for which the actor presently is being sentenced, … the actor was convicted of a misdemeanor on 3 separate occasions …, which convictions remain of record and unreversed." WIS. STAT. § 939.62(2). Both

13

statutes then provide for increased penalties if a person qualifies as a repeater or a domestic abuse repeater.[4]  *See* §§ 939.62(1), 939.621(2).

¶29    Additionally, this court has previously relied upon cases interpreting the general repeater statute when interpreting the domestic abuse repeater statute. *See **State v. Hill***, 2016 WI App 29, ¶12, 368 Wis. 2d 243, 878 N.W.2d 709.  In ***Hill***, we considered "what suffices as an admission that a defendant qualifies as a domestic abuse repeater under WIS. STAT. § 939.621(1)(b)." ***Id.***  We noted that no previous case had addressed that issue, but we stated that cases "interpreting the [general] repeater statute [were] instructive on this point." ***Id.***

¶30    Similarly, in this case, we agree with the State that it is appropriate to look to cases interpreting the general repeater statute when interpreting the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute.   More specifically, we agree that our interpretation should be guided by the Wisconsin Supreme Court's decisions in ***Wittrock*** and ***Hopkins***.  In those decisions, the supreme court interpreted nearly identical language in the closely related general repeater statute.  Under the prior-construction canon, the relevant language in the domestic abuse repeater statute should be "understood according to" those prior interpretations.  *See **Rector***, 407 Wis. 2d 321, ¶32.  And because the two statutes are *in pari materia*, they should be "construed together." *See **James***, 397 Wis. 2d 517, ¶19.  Furthermore, we must interpret the two statutes

---

[4] As the circuit court noted, unlike the general repeater statute, the domestic abuse repeater statute provides that "[t]he penalty increase under this section changes the status of a misdemeanor to a felony." *See* WIS. STAT. § 939.621(2).  We do not view this distinction as material for purposes of this appeal.  Instead, for all of the reasons already discussed, we conclude that despite this minor difference, the two statutes are closely related and *in pari materia*.

harmoniously, *see CED Props.*, 380 Wis. 2d 399, ¶24, and we presume that the nearly identical language in the two statutes was intended to have the same meaning, *see Estate of Miller*, 378 Wis. 2d 358, ¶35.

¶31 We therefore turn to our supreme court's decision in *Wittrock*. In that case, the defendant was convicted of four misdemeanor offenses, as a repeater. *Wittrock*, 119 Wis. 2d at 665. In support of the repeater enhancer, the State alleged that the defendant had been convicted of one count of disorderly conduct in September 1977 and two counts of disorderly conduct in February 1980. *Id.* at 666. The defendant conceded that his two February 1980 convictions were for offenses that occurred on separate dates. *Id.*

¶32 On appeal, the defendant argued that he did not qualify as a repeater under the general repeater statute because "the unambiguous, plain meaning of the statute requires that one be convicted of three misdemeanors in three separate court appearances in order to attain the status of a repeater." *Id.* at 667. The State, on the other hand, argued that the relevant statutory language "should be interpreted to mean that a defendant achieves repeater status once he or she has been convicted of three misdemeanors within the five-year period, regardless of the number of court appearances," and that "the term 'occasion' unambiguously refers to separate offenses." *Id.*

¶33 The supreme court concluded that the statutory language was ambiguous because "the term 'occasion' may be interpreted in two different ways by well-informed persons." *Id.* at 671. After examining the legislative history of the general repeater statute and considering the statute's purpose—i.e., "protect[ing] society from those individuals who are persistent violators and have not profited from the lesser punishments given for previous misdemeanors," *id.* at

15

675—the court concluded that the defendant was properly sentenced as a repeater, even though two of his prior misdemeanor convictions were entered on the same date during the same court appearance, *see id.* at 674-75. The court reasoned that, when drafting the relevant statutory language, the legislature was concerned with "the quantity of crimes rather than with the time of conviction." *Id.* at 674. The *Wittrock* court expressly stated that it was not addressing the related issue "of whether or not a single transaction giving rise to two or more misdemeanor convictions may serve to qualify one for repeater status." *Id.* at 668.

¶34 The court subsequently addressed that issue in *Hopkins*. There, the defendant was sentenced as a repeater "based upon three prior misdemeanor convictions entered in the Milwaukee County Circuit Court on December 26, 1989." *Hopkins*, 168 Wis. 2d at 806. Two of those prior misdemeanors had occurred on the same date and arose out of a single course of conduct. *Id.* at 806-07. On appeal, the defendant argued that he did not qualify as a repeater because those two misdemeanors "did not occur on 'separate occasions' as required by the [general repeater] statute." *Id.* at 807.

¶35 After discussing its decision in *Wittrock* and the legislative history considered therein, the *Hopkins* court concluded "that three convictions of misdemeanors during the five-year period satisfies the [general repeater] statute, regardless of when the misdemeanors were committed." *Hopkins*, 168 Wis. 2d at 810. The court reasoned that "if the quantity of the crimes is the critical factor, then neither the time of commission nor the time of conviction is important. What is important is that the defendant has been convicted of three prior misdemeanors." *Id.* at 809. Thus, "each conviction for a misdemeanor constitutes a separate occasion for purposes of" the general repeater statute. *Id.* at 816.

¶36    ***Wittrock*** and ***Hopkins*** were decided in 1984 and 1992, respectively. Since 1984, the legislature has amended the general repeater statute at least 20 times.[5]   However, the legislature has not changed the statutory language stating that an individual is a repeater if he or she "was convicted of a misdemeanor on 3 separate occasions" during the requisite statutory time period.  *Compare* WIS. STAT. § 939.62(2) (1983-84), *with* WIS. STAT. § 939.62(2) (1991-92), *and* WIS. STAT. § 939.62(2) (2023-24).   As such, we view the legislature as having acquiesced in the supreme court's interpretation of the phrase "was convicted of a misdemeanor on 3 separate occasions" in ***Wittrock*** and ***Hopkins***.  *See Estate of Miller*, 378 Wis. 2d 358, ¶51 (noting that the doctrine of legislative acquiescence "applies with equal, if not greater, force where the legislature has acted on the statute, but declines to revise the interpreted language").

¶37    Applying the supreme court's interpretation of the phrase "was convicted of a misdemeanor on 3 separate occasions" in the general repeater statute to the phrase "was convicted on 2 or more separate occasions" in the domestic abuse repeater statute, we conclude that a person is a domestic abuse repeater if he or she was convicted of two or more qualifying domestic abuse offenses during the requisite statutory time period, regardless of whether those convictions arose out of the same incident, had the same offense date, or occurred during the same court appearance.  Consistent with ***Wittrock*** and ***Hopkins***, what matters is the quantity of the defendant's prior domestic abuse crimes, not the time

---

[5] *See* 1989 Wis. Act 85, § 1; 1993 Wis. Act 289, § 10; 1993 Wis. Act 483, § 2; 1993 Wis. Act 486, § 584; 1995 Wis. Act 77, §§ 631-32; 1995 Wis. Act 448, § 448; 1997 Wis. Act 219, § 1r; 1997 Wis. Act 283, § 327; 1997 Wis. Act 295, § 11; 1997 Wis. Act 326, §§ 6-11; 1999 Wis. Act 85, § 185; 1999 Wis. Act 188, § 16; 2001 Wis. Act 109, §§ 562-566f; 2005 Wis. Act 14, §§ 14-16; 2005 Wis. Act 277, §§ 58-59; 2007 Wis. Act 116, § 32; 2015 Wis. Act 366, § 13; 2017 Wis. Act 128, §§ 10-11; 2021 Wis. Act 76, § 25; 2023 Wis. Act 10, § 15.

of commission or the time of conviction.[6]  *See **Wittrock***, 119 Wis. 2d at 674; ***Hopkins***, 168 Wis. 2d at 809.

### C.  The circuit court's reliance on ***Rector*** was misplaced.

¶38     In its decision granting Ricketts' motion to strike the domestic abuse repeater enhancer from the charges in this case, the circuit court relied heavily on our supreme court's recent decision in ***Rector***.  That reliance, however, was misplaced.

¶39     ***Rector*** interpreted the phrase "separate occasions" in the sex offender registration statute, which "requires lifetime registration when a 'person has, on 2 or more separate occasions, been convicted … for a sex offense.'" ***Rector***, 407 Wis. 2d 321, ¶1 (quoting WIS. STAT. § 301.45(5)(b)1. (2021-22)). The court concluded that, in that context, the phrase "separate occasions" "does not refer solely to the number of convictions." *Id.*  Instead, the court held that "the circuit court did not err by ordering [the defendant] to register as a sex offender for fifteen years rather than until his death because his five convictions for possession of child pornography were filed in a single case and occurred during the same hearing." *Id.*

¶40     After considering dictionary definitions of the words "separate" and "occasion," the ***Rector*** court reasoned that the plain meaning of a "separate occasion" is "an incident or time at which an event occurred, which is set apart

---

[6] Ricketts asserts that *State v. Wittrock*, 119 Wis. 2d 664, 350 N.W.2d 647 (1984), and *State v. Hopkins*, 168 Wis. 2d 802, 484 N.W.2d 549 (1992), are "poorly reasoned and ripe for re-evaluation and reversal by the Wisconsin Supreme Court."  This court, however, lacks the authority to "overrule, modify or withdraw language from a previous supreme court case."  *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

from another incident or time at which a different event occurred." *Id.*, ¶12. The court then distinguished *Wittrock*, explaining:

> The bulk of *Wittrock*'s analysis attempts to discern whether "occasion" refers to the incident of the commission of the crime or the incident of conviction. Of import, any analysis in *Wittrock* where we tried to resolve the ambiguity of "occasion" is irrelevant here since we recognize that "occasion" in WIS. STAT. § 301.45(5)(b)1. [(2021-22)] unambiguously refers to the incident of conviction.

*Rector*, 407 Wis. 2d 321, ¶26. The court further explained that "the *Wittrock* analysis focuses on the legislative history and purpose of the criminal repeater statute, which is entirely different than the legislative history and purpose of the sex offender registration statute." *Id.*, ¶27. The court stated, "In summary, the portions of *Wittrock*—and by extension, *Hopkins*—that are inconsistent with our analysis are all based on considerations that are irrelevant or inapplicable in the current context." *Id.*, ¶30.

¶41 In addition, the *Rector* court concluded that the sex offender registration statute is not "so closely related" to the general repeater statute "that the court must interpret all words and phrases in a singular way to avoid confusion or absurd results." *Id.*, ¶32. The court noted that "the two statutes reside in different chapters governing different subject matter," "[t]here are no cross references between [the statutes]," and "the statutes do not rely on each other or otherwise interact." *Id.*, ¶35. The court also observed that although both statutes use the phrase "separate occasions," "the surrounding structure and language of each statute is far from identical." *Id.*, ¶38.

> For example, WIS. STAT. § 939.62(2) looks to "the 5-year period immediately preceding the commission of the crime for which the actor presently is being sentenced," while [WIS. STAT. §] § 301.45(5)(b)1. [(2021-22)] does not include a time period and does not refer separately to the

> current conviction, but simply looks to whether a person "has, on two or more separate occasions, been convicted."

*Id.* For these reasons, the court declined to apply the prior-construction canon to the phrase "separate occasions" in the sex offender registration statute. *Id.*, ¶40.

¶42 Notably, the ***Rector*** court did not overrule ***Wittrock*** or ***Hopkins***. *See Rector*, 407 Wis. 2d 321, ¶25 & n.7. Instead, the court "reiterate[d] that this case is not about whether to overrule ***Wittrock*** and ***Hopkins*** but whether we should extend those cases' interpretation of WIS. STAT. § 939.62 to a different statute." *Id.* The court also acknowledged that the legislature had "made changes to … § 939.62 at various times since this court's decisions in ***Wittrock*** and ***Hopkins*** and did not make any changes to the 'separate occasions' language, indicating possible legislative acquiescence in the court's interpretation within the context of that statute." *Id.*

¶43 The circuit court erred by relying on ***Rector*** for two reasons. First, ***Rector*** specifically addressed the meaning of the phrase "separate occasions" in the sex offender registration statute. That statute, however, is not closely related to the domestic abuse repeater statute, for the same reasons that the ***Rector*** court concluded it is not closely related to the general repeater statute. Namely, the statutes are located in different chapters, they govern different subject matter, they do not reference one another, and they do not "rely on each other or otherwise interact." *See id.*, ¶35. Moreover, the "surrounding structure and language of each statute is far from identical," *id.*, ¶38, as the domestic abuse repeater statute directs a court to consider prior convictions "during the 10-year period immediately prior to the commission of the crime for which the person is presently being sentenced," *see* WIS. STAT. § 939.621(1)(b), while the sex offender registration statute "does not include a time period and does not refer separately to the current conviction,

but simply looks to whether a person 'has, on two or more separate occasions, been convicted,'" ***Rector***, 407 Wis. 2d 321, ¶38 (citation omitted).

¶44    Because the sex offender registration statute and the domestic abuse repeater statute are not closely related, ***Rector***'s interpretation of the phrase "separate occasions" in the former statute does not govern our interpretation of that phrase in the latter statute. Instead, as explained above, our analysis here is governed by the supreme court's decisions in ***Wittrock*** and ***Hopkins***, as those cases interpreted the general repeater statute, which *is* closely related to the domestic abuse repeater statute. Importantly, as discussed above, the ***Rector*** court did not overrule ***Wittrock*** or ***Hopkins***.

¶45    Second, the circuit court erred by relying on ***Rector*** because the legislature has affirmatively rejected ***Rector***'s interpretation of the phrase "separate occasions" in the sex offender registration statute. *See **Progressive N. Ins. Co.***, 281 Wis. 2d 300, ¶52 ("[A] construction given to a statute by the court becomes a part thereof, *unless the legislature subsequently amends the statute to effect a change*." (emphasis added) (citation omitted)). The supreme court's opinion in ***Rector*** was issued on May 23, 2023. As noted above, at the time ***Rector*** was decided, the sex offender registration statute required lifetime registration "when a 'person has, on 2 or more separate occasions, been convicted … for a sex offense.'" ***Rector***, 407 Wis. 2d 321, ¶1 (quoting WIS. STAT. § 301.45(5)(b)1. (2021-22)). In March 2024—less than one year after the supreme court issued its decision in ***Rector***—the legislature amended the sex offender registration statute to require lifetime registration when a person "has been convicted 2 or more times, *including convictions that were part of the same proceeding, occurred on the same date, or were included in the same criminal*

21

*complaint*, for a sex offense." WIS. STAT. § 301.45(5)(b)1. (emphasis added); *see also* 2023 Wis. Act 254, § 1.

¶46    Thus, when the legislature amended WIS. STAT. § 301.45(5)(b)1. in March 2024, it rejected the ***Rector*** court's interpretation of that statute and instead adopted language clarifying that lifetime registration is required whenever a person has two or more qualifying convictions. In essence, the legislature made the language of § 301.45(5)(b)1. consistent with the supreme court's prior interpretations of the phrase "separate occasions" in ***Wittrock*** and ***Hopkins***. Additionally, the legislature made the initial applicability for this change retroactive to September 2, 2017, *see* 2023 Wis. Act 254, § 5, more than five years before ***Rector*** was decided.[7]

¶47    Under these circumstances, we conclude that the circuit court erred by relying on ***Rector***'s interpretation of the sex offender registration statute to inform its interpretation of the domestic abuse repeater statute.

---

[7] On September 1, 2017, the Wisconsin Attorney General issued an opinion, at the request of the Department of Corrections (DOC), regarding WIS. STAT. § 301.46(2m)(am) (2017-18), "a statute governing law enforcement bulletins for sex offenders with multiple criminal convictions." Wis. Op. Att'y Gen. OAG-02-17, ¶1 (Sept. 1, 2017), *available at* https://docs.legis.wisconsin.gov/misc/oag/recent/oag_2_17.pdf. The statute was "triggered by convictions, or findings of not guilty by reason of mental disease or defect, 'on 2 or more separate occasions.'" *Id.* (quoting § 301.46(2m)(am) (2017-18)). The DOC asked whether the statute applied "when the convictions occur at the same time or stem from the same criminal complaint." *Id.* The attorney general concluded "that the language referring to convictions 'on 2 or more separate occasions' refers to the number of convictions, including multiple convictions imposed at the same time and based on the same complaint." *Id.*, ¶2 (quoting § 301.46(2m)(am) (2017-18)). When the legislature amended the sex offender registration statute in March 2024, it made the change retroactive to the day after the issuance of this attorney general opinion.

### D. Ricketts' reliance on *Wooden v. United States* is unpersuasive.

¶48 On appeal, Ricketts argues that the circuit court's interpretation of the domestic abuse repeater statute is consistent with the United States Supreme Court's decision in *Wooden v. United States*, 595 U.S. 360 (2022). The *Rector* court cited *Wooden* as "persuasive" authority regarding the ordinary meaning of the word "occasion" in the sex offender registration statute. *See Rector*, 407 Wis. 2d 321, ¶16. As the *Rector* court acknowledged, however, the United States Supreme Court's analysis is not binding with respect to "matters of state statutory interpretation." *Id.* Moreover, we conclude that *Wooden* is not persuasive as to the interpretation of the domestic abuse repeater statute because it is materially distinguishable from the instant case.

¶49 *Wooden* interpreted the federal Armed Career Criminal Act (ACCA), which "mandates a 15-year minimum sentence for unlawful gun possession when the offender has three or more prior convictions for violent felonies like burglary 'committed on occasions different from one another.'" *Wooden*, 595 U.S. at 363 (quoting 18 U.S.C. § 924(e)(1)). The issue on appeal was whether the 15-year mandatory minimum sentence applied to Wooden, who had 10 prior burglary convictions arising "from a single criminal episode" on a single night. *Id.* at 362-63. The Supreme Court concluded that the mandatory minimum sentence did not apply to Wooden because "[c]onvictions arising from a single criminal episode, in the way Wooden's did, can count only once under [the] ACCA." *Id.* at 363.

¶50 *Wooden*'s analysis does not guide our interpretation of the domestic abuse repeater statute because that statute and the federal ACCA are neither closely related nor *in pari materia*. To the contrary, the two statutes are

completely unrelated to one another. Moreover, the statutes do not use the same language when referring to a defendant's prior convictions. The ACCA refers to convictions for violent felonies "*committed* on occasions different from one another." *See id.* (quoting 18 U.S.C. § 924(e)(1) (emphasis added)). In contrast, the domestic abuse repeater statute states that a domestic abuse repeater is a person who "was *convicted* on 2 or more separate occasions" of a domestic abuse offense. *See* WIS. STAT. § 939.621(1)(b) (emphasis added).

¶51 Furthermore, the *Wooden* Court's analysis relied, in part, on the statutory history of the ACCA. The Court noted that, for the first four years of its existence, the ACCA "asked only about offenses, not about occasions. Its enhanced penalties, that is, kicked in whenever a[n] … offender had three prior convictions for specified crimes." *Wooden*, 595 U.S. at 371. "Congress added the occasions clause only after a court applied [the] ACCA to an offender much like Wooden—a person convicted of multiple counts of robbery arising from a single criminal episode." *Id.* Thus, when interpreting the term "occasions" in the ACCA, *Wooden* relied on the fact that Congress had amended the statute with the specific intent that the mandatory minimum sentence would not apply to offenders convicted of multiple counts arising from a single course of conduct. *Id.* at 373-74.

¶52 In contrast, the statutory history of the domestic abuse repeater statute does not evidence any similar legislative intent. Moreover, as discussed above, the legislature has not amended the relevant language in the general repeater statute—which is closely related to the domestic abuse statute—since the supreme court's decisions in *Wittrock* and *Hopkins*. Thus, the legislature has acquiesced in those cases' interpretations of the relevant language. We see no persuasive reason to disregard our supreme court's decisions in *Wittrock* and

*Hopkins* and instead follow the *Wooden* Court's interpretation of the word "occasions," as used in a wholly unrelated federal statute.

## CONCLUSION

¶53     Based upon our supreme court's prior decisions in *Wittrock* and *Hopkins*, we conclude that for purposes of the domestic abuse repeater statute, a defendant "was convicted on 2 or more separate occasions" if he or she was convicted of two qualifying domestic abuse offenses during the requisite statutory time period, regardless of whether those convictions arose out of the same incident, had the same offense date, or occurred during the same court appearance. Here, it is undisputed that Ricketts was convicted of two qualifying domestic abuse offenses during the requisite statutory time period. Ricketts therefore qualifies as a domestic abuse repeater. Accordingly, we reverse the circuit court's order striking the domestic abuse repeater enhancer from the charges in this case, and we remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

Recommended for publication in the official reports.